UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| MERRIDY JEAN FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-CV-110 JD |
| | ) | |
| WRIGHT MEDICAL TECHNOLOGY, | ) | |
| INC. and WRIGHT MEDICAL GROUP, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This is an Indiana Product's Liability action over allegedly defective PROFEMUR® orthopedic hip implant components used by Plaintiff Merridy Fields during her hip replacement and revision surgeries at Franciscan St. Elizabeth Hospital in Tippecanoe County, Indiana. According to the first amended complaint [DE 11], Defendants Wright Medical Technology, Inc. ("WMT") and Wright Medical Group, Inc. ("WMG") were involved in the design, marketing, sales, and/or distribution of the defective hip implant components. WMT answered the amended complaint [DE 17], while its parent company, WMG, moved to dismiss the claims against it for lack of personal jurisdiction [DE 12]. For the following reasons, the Court denies the motion.

## I. FACTUAL BACKGROUND

WMT and WMG are both incorporated in the State of Delaware and have their principal places of business in Memphis, Tennessee. WMT is a wholly owned subsidiary of WMG. WMT has admitted that at certain times it has designed, manufactured, labeled, distributed, sold, and/or marketed PROFEMUR® hip products; however, WMG denies Ms. Fields' allegations that it was in any way involved with the products at issue in this case. In addition, WMG argues

that it is not registered to do business in Indiana, it has no office, property, or place of business in Indiana, it does not transact business in Indiana, and it has no clients or employees in Indiana. WMG further denies operating an engineering facility in Warsaw, Indiana, but it fails to identify the entity or entities that operate the Warsaw facility.

In support of its motion, WMG has submitted two affidavits by two different individuals: Amy Reeves, who claims to have personal knowledge of the facts in her affidavit by virtue of her position as Senior Director and Controller; and Dean Morgan, who claims to have personal knowledge of the facts in his affidavit by virtue of his position as Vice President of the Tax and Treasury Departments [DE 12-1, Reeves Affidavit at ¶ 2; DE 20-1, Morgan Affidavit at ¶ 2]. Despite WMG's fervent stance that WMG and WMT are separate entities, the affiants chosen by WMG to support its motion are actually employees of WMT, not WMG. *Id*.

Ms. Fields argues that the affidavits ought to be struck or given little weight because the affiants do not work for WMG, the basis of their claimed personal knowledge is suspect, and the contents of their affidavits are disputed by Plaintiff's exhibits. Specifically, Plaintiff's exhibits consist of the following: (1) press releases from 2014 indicating that upon WMG's merger with Tornier, N.V., the "combined company" maintained its engineering center in Warsaw, Indiana [DE 24-2 at 1-2; DE 24-3], where 20 to 49 employees are employed and several million dollars in revenue are generated annually [DE 24-4; DE 24-5; DE 24-6; DE 24-7; DE 24-8]; (2) filings made by WMG with the United States Securities and Exchange Commission ("SEC") in 2001 indicating that it was the owner and distributor of PROFEMUR® hip products after it acquired Cremascoli Ortho Group in 1999, and it was developing modified versions of the products[1] [DE 24-10 at 11, 14]; (3) filings made by WMG with the SEC in 2014 detailing PROFEMUR® hip

---

[1] Ms. Fields claims that it was the re-designed PROFEMUR® hip product that was distributed in Indiana and used during her surgeries, thereby causing her injury in Indiana.

2

product litigation and acknowledging its financial responsibility and underinsured risk exposure for the products [DE 24-11 at 25-26]; and (4) ongoing press releases by WMG between the years 2004 and 2013 involving its PROFEMUR® hip products [DE 24-14].

## II. STANDARD OF REVIEW

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a party may move to dismiss for lack of personal jurisdiction. Once a defendant moves to dismiss on that basis, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). To that end, the parties may submit, and a court may consider, materials outside of the pleadings. *Id.* In ruling on such a motion, a court must first determine whether the plaintiff has made out a *prima facie* case of personal jurisdiction. *Id.*; *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). At that stage, a court must "take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *Purdue*, 338 F.3d at 782. If the plaintiff meets that initial burden but there are material factual disputes, the Court must then hold an evidentiary hearing, at which point the plaintiff must prove any facts supporting jurisdiction by a preponderance of the evidence. *Hyatt*, 302 F.3d at 713.

## III. DISCUSSION

The Court has personal jurisdiction over a defendant to the same extent a state court in this forum could exercise personal jurisdiction over that defendant. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). Here, Indiana's long-arm statute permits its courts to exercise personal jurisdiction to the full extent permitted under federal law. *Id.*; *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006) ("Indiana's long-arm provision now extends to the limits of the Constitution."). Therefore, to determine whether it

may exercise jurisdiction over WMG, the Court must decide "whether 'the exercise of jurisdiction comports with the limits imposed by federal due process.'" *Advanced Tactical*, 751 F.3d at 800 (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 319 (1945)). This requires that "individuals have 'fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign . . . .'" *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977)).

"Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), and the litigation results from alleged injuries that 'arise out of or relate to' those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)." *Burger King*, 471 U.S. at 472–73. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 134 S. Ct. at 1121 (quoting *Keeton*, 465 U.S. at 775). The "constitutional touchstone" for specific jurisdiction "remains whether the defendant purposefully established 'minimum contacts' in the forum." *Burger King*, 471 U.S. at 474. Furthermore, the relation between the defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum . . ." *Id.* (quoting *Burger King*, 471 U.S. at 475). Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement. *Id.*; *see Advanced Tactical*, 751 F.3d at 801.

4

A party may also be subject to general jurisdiction, meaning jurisdiction over matters unrelated to the party's connection with the forum State, where the party's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Ties Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King*, 471 U.S. at 476 (citing *Int'l Shoe v. Washington*, 326 U.S. at 320).

In the present case, Ms. Fields contends that WMG is subject to both specific and general jurisdiction. Given that the motion to dismiss was filed and briefed before any discovery was conducted, Ms. Fields argues that she has demonstrated a *prima facie* case of personal jurisdiction at this point. Ms. Fields asserts that further discovery on the substance of the claims will likely show that: (1) for the purpose of establishing specific jurisdiction, WMG was involved with the design and distribution of the hip implant components to Indiana (whether on its own accord or via its management/control of WMT), and (2) for the purpose of establishing general jurisdiction, that WMG operates an engineering facility in Warsaw, Indiana.

The Court agrees that Ms. Fields has established a *prima face* case of personal jurisdiction over WMG because, as detailed below, she has sufficiently raised factual questions concerning the identity and role of WMG through SEC statements, press releases, and other written materials—and those factual disputes must be determined after discovery has been conducted on the merits of the claims. *See* Fed. R. Civ. P. 12(i) (authorizing a court to order the deferral of a determination on Rule 12(b) motions until trial); *Purdue Research Found.*, 338 F.3d

at 782 ("when the district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing, . . . the plaintiff 'need only make out a *prima facie* case of personal jurisdiction.'").

Specifically, while WMG would want this Court to believe that it has no involvement with the Warsaw, Indiana engineering plant for purposes of establishing general jurisdiction over it, it is suspicious that WMG fails to identify the entities that actually control the activities of the (once) Tornier Warsaw facility, that several current employees of the Warsaw facility actually identify themselves as working for WMG, that WMG used WMT employees to attest to WMG's lack of involvement at the Warsaw facility, and that WMG fails to attest to the type of operational control it exerts (or has exerted) over its subsidiaries' activities in Indiana. Recognizing that general jurisdiction cannot be premised simply on a parent-subsidiary relationship, *see Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000), Ms. Fields' documentary evidence shows that the operations conducted in Indiana may very well be attributed to WMG and present the type of "continuous and systematic general business contacts" with the forum necessary to establish personal jurisdiction over WMG. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997). At this stage, Ms. Fields is entitled to have the conflicts in the affidavits and supporting materials resolved in her favor. *Purdue Research Found.*, 338 F.3d at 783.

Similarly, Ms. Fields has supplied public filings and press releases made by WMG that contain representations which contradict WMG's (presently) claimed non-involvement with the design, manufacture, labeling, distribution, selling, and/or marketing of PROFEMUR® hip products (either on its own or via its control of WMT). According to the exhibits provided by Ms. Fields, WMG has reported to the SEC and proclaimed to the public that after its acquisition

6

of PROFEMUR® hip products, it was responsible for implementing new technology into the products and it has accounted for the financial impact of PROFEMUR® hip product litigation. Whether or not WMG was merely speaking on behalf of its subsidiaries as it claims, will ultimately be borne out by future discovery. Even WMG admits "courts recognize that the information in a consolidated report [or in this case, press releases too] could pertain to the parent or any of its subsidiaries" [DE 20 at 7, 9], and thus, the Court finds that Ms. Fields is entitled to have the dispute presented in the written materials resolved in her favor at this time. *Purdue Research Found.*, 338 F.3d at 782-83. Once WMG's *actual* involvement with the design, manufacture, labeling, distribution, selling, and/or marketing of PROFEMUR® hip products becomes known via discovery, then its *actual* connections with Indiana can be further analyzed. *Walden*, 134 S. Ct. at 1125 (noting that "*Calder* made clear that a mere injury to a forum resident is not a sufficient connection to the forum"). For now, Ms. Fields has sufficiently raised factual questions concerning the identity of WMG and its role with respect to the product at issue which was marketed, distributed, and used in Indiana, such that she has established a *prima facie* case of personal jurisdiction over WMG in Indiana.

## IV. CONCLUSION

Wright Medical Group, Inc.'s motion to dismiss [DE 12] is DENIED at this time, and the Court will determine personal jurisdiction over WMG by a preponderance of the evidence at trial, consistent with Fed. R. Civ. P. 12(i), or prior to trial if a renewed motion is filed after discovery closes.

SO ORDERED.

ENTERED: June 24, 2016

                                                      /s/ JON E. DEGUILIO
                                      Judge
                                      United States District Court